*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-1011**

State of Minnesota,
Respondent,

vs.

Rosalio Martinez, Jr.,
Appellant.

**Filed June 17, 2024**
**Reversed and remanded**
**Gaïtas, Judge**

Steele County District Court
File No. 74-CR-22-1197

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Julia A. Forbes, Steele County Attorney, Campbell R. Housh, Assistant County Attorney, Owatonna, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Charles F. Clippert, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Gaïtas, Presiding Judge; Worke, Judge; and Larson, Judge.

**NONPRECEDENTIAL OPINION**

**GAÏTAS**, Judge

Appellant Rosalio Martinez Jr. challenges his conviction, following a jury trial, for second-degree driving while impaired—refusal to submit to a chemical test of his blood or urine (DWI test refusal). He argues that the prosecutor's introduction of a summary of his

prior convictions into evidence—which the district court allowed pursuant to Minnesota Rule of Evidence 1006—violated his constitutional right to confront witnesses. Martinez also contends that his conviction must be reversed because the district court's jury instruction for DWI test refusal provided an inaccurate definition of the legal concept of probable cause. Because the admission of the summary of Martinez's prior convictions into evidence violated Martinez's constitutional right to confront witnesses, and the error was prejudicial, we reverse and remand for a new trial.

**FACTS**

In July 2022, an Owatonna police officer stopped Martinez because he believed that Martinez was driving with a canceled driver's license and he had observed Martinez's car touch the lane line. After interacting with Martinez during the traffic stop, the officer suspected that Martinez was under the influence of alcohol or drugs. The officer arrested Martinez and then obtained a search warrant for Martinez's blood or urine. Martinez refused to provide a blood or urine sample.

Based on these events, respondent State of Minnesota charged Martinez with second-degree DWI test refusal and two other offenses that were dismissed before trial. The complaint alleged that Martinez had committed prior driving-while-impaired offenses, which enhanced the charge of DWI test refusal to a gross-misdemeanor.

Martinez had a jury trial. At the beginning of the trial, and outside of the jury's presence, the prosecutor informed defense counsel and the district court that he intended to introduce a "summary" of Martinez's prior convictions under rule 1006 of the Minnesota Rules of Evidence. There was no further discussion of the issue. During the trial, the

prosecutor called a paralegal as a witness. The paralegal testified that she had requested information about Martinez's prior convictions and received "[a]pproximately 50 to 60 pages" of material. She identified exhibit 5 as "a summary of the criminal convictions that [she] requested for this case."[1] The prosecutor then asked the paralegal, "Would you mind reading for the jury Number 1 and Number 2 on that document?" But defense counsel objected, and the district court sustained the objection. The prosecutor offered exhibit 5 into evidence. Over defense counsel's hearsay objection, the district court admitted exhibit 5. That exhibit is shown here:

| STATE OF MINNESOTA | | DISTRICT COURT |
| --- | --- | --- |
| | | THIRD JUDICIAL DISTRICT |
| COUNTY OF STEELE | | CRIMINAL DIVISION |

| STATE OF MINNESOTA, | | |
| --- | --- | --- |
| | Plaintiff, | |
| -vs- | | STATE'S SUMMARY OF EVIDENCE PURSUANT TO MINNESOTA RULE OF EVIDENCE 1006 |
| ROSALIO MARTINEZ, JR, | | |
| | Defendant. | District Court File No. 74-CR-22-1197 |

**Summary of Evidence**

The following may be considered by you as evidence, subject to the Court's instructions regarding the proper use of other crimes evidence:

1. On July 10, 2018, Rosalio Martinez Jr. was convicted of DWI – Refusal to Submit to Testing in violation of Minnesota Statute: 169A.20.2(1) in Steele County Court File Number 74-CR-18-837.

2. On September 28, 2018, Rosalio Martinez Jr. was convicted of DWI – Refusal to Submit to Testing in violation of Minnesota Statute: 169A.20.2(1) in Steele County Court File Number 74-CR-18-1670.



---

[1] The paralegal did not testify that she prepared exhibit 5.

Defense counsel asked the district court to give the pattern jury instruction for the offense of DWI test refusal. But the district court provided its own instruction, which informed the jury that "probable cause" to arrest is "a legal term that means an honest and strong suspicion based on all of the information the officer knew at the time."

The jury found Martinez guilty of second-degree DWI test refusal. It also found that the state had proved the existence of two prior impaired-driving incidents beyond a reasonable doubt.

Martinez appeals.

## DECISION

Martinez argues that the district court erred in admitting exhibit 5—the summary of his convictions. He contends that the summary was not admissible under rule 1006 of the Minnesota Rules of Evidence, was inadmissible hearsay, and violated his constitutional right to confront witnesses, requiring reversal of his conviction. Martinez further argues that the district court's jury instruction on DWI test refusal was legally incorrect, mandating a new trial. We agree with Martinez that the admission of the summary of his convictions into evidence violated his constitutional right to confront witnesses and that this error was prejudicial. Thus, we reverse and remand for a new trial on this ground.

We begin our analysis by considering the applicable standard of review. An appellate court applies different standards of review for errors that were preserved with an objection at trial and unobjected-to errors. Because the parties disagree as to the standard of review we should apply here, we briefly review these standards.

4

When a criminal defendant preserved an evidentiary error by objecting to the evidence at trial, the applicable standard of review depends on whether the error implicated a constitutional right. For preserved evidentiary errors that did not implicate a constitutional right, the appellate court reviews the district court's rulings for an abuse of discretion. *State v. Peltier*, 874 N.W.2d 792, 802 (Minn. 2016). "A district court abuses its discretion when its decision is based on an erroneous view of the law or is against logic and the facts in the record." *State v. Vangrevenhof*, 941 N.W.2d 730, 736 (Minn. 2020) (quotation omitted). To obtain reversal of a conviction based on such errors, the appellant must show that there is "a reasonable possibility that the wrongfully admitted evidence significantly affected the verdict." *Peltier*, 874 N.W.2d at 802 (quotation omitted) (discussing factors a court considers when determining whether wrongfully admitted evidence significantly affected the verdict). When an appellant alleges that an evidentiary error—preserved with an objection—violated the appellant's constitutional right to confront witnesses, the reviewing court considers de novo whether there was a constitutional violation. *State v. Caulfield*, 722 N.W.2d 304, 308 (Minn. 2006). If there was a violation of the constitutional right to confront witnesses, reversal is required unless the error was harmless beyond a reasonable doubt. *Id.* at 314.

When a defendant failed to preserve an evidentiary error—constitutional or otherwise—the appellate court applies the plain-error standard of review. *State v. Tscheu*, 758 N.W.2d 849, 863 (Minn. 2008). This standard requires a defendant to show: (1) error, (2) that was plain, and (3) that affected substantial rights. *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998). An error is plain if it is "clear and obvious; usually this means an

5

error that violates or contradicts case law, a rule, or an applicable standard of conduct." *State v. Matthews*, 779 N.W.2d 543, 549 (Minn. 2010). Such an error affected substantial rights when "there is a reasonable likelihood that the error substantially affected the verdict." *State v. Matthews*, 800 N.W.2d 629, 634 (Minn. 2011). When an appellant satisfies the three prongs of the plain-error test, the appellate court must decide whether to address the error to "ensure fairness and the integrity of the judicial proceedings." *Griller*, 583 N.W.2d at 740.

On occasion, the appellate court must decide as a threshold issue whether a trial objection was *sufficient* to preserve an evidentiary error. This may occur when an appellant objected to evidence on one ground at trial and then, on appeal, raises a seemingly different challenge to the evidence. As relevant here, when an appellant objected to evidence at trial on a ground other than a violation of the constitutional right to confront witnesses, the appellant did not preserve the constitutional error unless it is "apparent from the context" that the constitutional error was the "specific ground" for the objection. *State v. Rossberg*, 851 N.W.2d 609, 617-18 (Minn. 2014).

We now turn to the arguments of the parties regarding the applicable standard of review. Martinez points out that he objected to the summary of his convictions at trial on "hearsay grounds." He argues that this objection preserved each of the errors he alleges on appeal, including his claim that the evidence violated his constitutional right to confront witnesses. The state responds that Martinez's hearsay objection only preserved the issue of whether the summary was inadmissible hearsay and not the other issues that Martinez now raises.

Whether Martinez's objection on "hearsay grounds" was sufficient to preserve his other challenges to the evidence is a close question. But we need not answer that question because we conclude that the admission of the summary of convictions was error that entitled Martinez to relief even under the plain-error standard of review.

Both the United States and Minnesota Constitutions afford a criminal defendant the right "to be confronted with the witnesses against" the defendant. U.S. Const. amend. VI; Minn. Const. art. I, § 6; *see also State v. Hull*, 788 N.W.2d 91, 100 (Minn. 2010) (noting that confrontation claims are analyzed the same under the federal and state constitutions). These provisions are often referred to as the "Confrontation Clause." The Confrontation Clause prohibits testimonial statements from being offered for the truth of the matter asserted when the defendant is unable to cross-examine the declarant. *Anderson v. State*, 830 N.W.2d 1, 9 (Minn. 2013) (citing *Crawford v. Washington*, 541 U.S. 36, 59 (2004)). An appellant alleging a violation of the Confrontation Clause must show that "the statement in question was testimonial, the statement was admitted for the truth of the matter asserted, and the [appellant] was unable to cross-examine the declarant." *Id.*

Turning to the first element of a Confrontation Clause violation—whether the evidence was a testimonial statement—the "critical determinative factor . . . is whether it was prepared for litigation." *Caulfield*, 722 N.W.2d at 309 (citing *State v. Bobadilla*, 709 N.W.2d 243, 250-51 (Minn. 2006) ("[T]he testimonial question turns on whether government questioners or declarants take or give a statement 'with an eye toward trial.'") and *State v. Scacchetti*, 711 N.W.2d 508, 513 (Minn. 2006) ("[T]he central considerations are . . . whether either a declarant or government questioner is acting, to a substantial

7

degree, in order to produce a statement for trial.")). If a document is prepared "for authentication purposes" and not "for providing evidence in litigation," it is nontestimonial. *State v. Noor*, 907 N.W.2d 646, 655 (Minn. App. 2018), *rev. denied* (Minn. Apr. 25, 2018).

Martinez argues that exhibit 5 is a testimonial statement because it was prepared for litigation. We agree. The record shows that the state prepared the summary of Martinez's prior convictions to be used at trial as substantive evidence of those convictions. The paralegal for the prosecutor's office testified that she obtained records concerning Martinez's prior convictions. The summary—which includes a case caption—purports to be the state's summary of those convictions. At trial, the state introduced the summary in evidence to prove the prior-conviction element of its case. Indeed, the summary was the only evidence of Martinez's prior convictions.

The state contends that the summary is a nontestimonial record "that authenticates other kinds of certified copies of public records," as was the document at issue in our *Noor* decision. But we are not persuaded. In *Noor*, the state introduced a "certificate of order sent" into evidence—a document that certified the authenticity of a Department of Public Safety order revoking Noor's driver's license and confirming that the order had been mailed to Noor. Noor argued on appeal that the "certificate of order sent" was a testimonial document for the purpose of the Confrontation Clause. *Id.* at 650. We rejected that argument, determining that the document was nontestimonial because "(1) United States Supreme Court precedent suggests documents introduced for authentication purposes, instead of to prove a fact, are nontestimonial; (2) an examination of Minnesota caselaw

8

reaches the same result; and (3) the certificate is duplicative of nontestimonial documents."
*Id.* at 654.

Our rationale in *Noor* does not apply here. The summary was not introduced to authenticate other evidence. It was introduced to prove a fact—that Martinez had prior qualifying convictions. Moreover, the summary was not duplicative of nontestimonial documents. The summary was the sole evidence of Martinez's prior convictions presented at trial. Given these circumstances, the summary was testimonial. *Accord Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 311 (2009) (determining that affidavits reporting results of forensic analysis were testimonial because their "sole purpose . . . was to provide prima facie evidence of" an element of the offense); *State v. Jackson*, 764 N.W.2d 612, 617-18 (Minn. App. 2009) (determining that a firearm trace report introduced to prove firearm ownership was testimonial), *rev. denied* (Minn. July 22, 2009); *State v. Weaver*, 733 N.W.2d 793, 799-800 (Minn. App. 2007) (determining that a lab report introduced to prove the cause of death in a murder trial was testimonial), *rev. denied* (Minn. Sept. 18, 2007); *Caulfield*, 722 N.W.2d at 307, 309 (determining that a lab report introduced to prove that a substance was cocaine in a drug-sale trial was testimonial).

The parties do not dispute that the remaining two elements of a Confrontation Clause violation occurred in this case—that the summary was offered as proof of Martinez's prior convictions and that Martinez did not have an opportunity to cross-examine the declarant.[2] Because the summary was a testimonial document offered to prove

---

[2] At oral argument before this court, the prosecutor candidly acknowledged that he prepared the summary himself.

the truth of the matter asserted, and Martinez did not have an opportunity to cross-examine the declarant, the admission of the summary in evidence violated Martinez's constitutional right to confrontation. Thus, there was plain error.

There is also no dispute that the erroneous admission of the summary affected Martinez's substantial rights. To convict Martinez of second-degree DWI test refusal, the state was required to prove beyond a reasonable doubt that Martinez had "a qualified impaired driving incident" within ten years of his refusal. *See* Minn. Stat. §§ 169A.25, subd. 1(b) ("A person who violates section 169A.20, subdivision 2 . . . , is guilty of second-degree driving while impaired if one aggravating factor was present when the violation was committed.") .03, subd. 3(1) ("'Aggravating factor' includes . . . a qualified prior impaired driving incident within the ten years immediately preceding the current offense.") (2020). And the only trial evidence that Martinez had a qualified impaired driving incident was exhibit 5—the summary. There is a reasonable likelihood that the admission of the summary into evidence substantially affected the verdict. *See Matthews*, 800 N.W.2d at 634.

Because the admission of the summary into evidence was plain error that affected Martinez's substantial rights, Martinez has satisfied the first three elements of our plain-error standard of review. But before we address the error, we must determine whether doing so will "ensure fairness and the integrity of the judicial proceedings." *State v. Portillo*, 998 N.W.2d 242, 255 (Minn. 2023) (quotation omitted).

"'[W]hen there is a reasonable likelihood that but for the . . . error,' the result would be different," affirming a conviction would "adversely affect the public's confidence in the

10

fairness and integrity of judicial proceedings." *Id.* at 256 (quoting *State v. Little*, 851 N.W.2d 878, 886 (Minn. 2014)). Here, without the summary of Martinez's convictions, the state would not have been able to satisfy an element of second-degree DWI test refusal. But for the error, the result of Martinez's trial would have been different. We therefore conclude that reversing Martinez's conviction and remanding for a new trial will "ensure fairness and the integrity of the judicial proceedings." *Id.* at 255.

Because we reverse and remand on the ground that the admission of the summary violated Martinez's right to confrontation, we decline to address the second issue that Martinez raises on appeal—whether the district court provided an erroneous jury instruction for DWI test refusal where Martinez allegedly refused to comply with a search warrant for his blood or urine. However, should the jury instruction issue recur on remand, we direct the parties and the district court to our recent decision in *State v. Torrez*, ___ N.W.2d ___ (Minn. App. June 10, 2024).

**Reversed and remanded.**